UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN THE MATTER OF:                                        CASE NO.

**MILTON RICHARD SABA**                                  **05-20922**
**MERLE LYNN SABA**                                      **SECTION A**

DEBTORS                                                  CHAPTER 7

**CYNTHIA BRANDON**                                       ADVERSARY NO.

PLAINTIFF                                                **06-1328**

VERSUS

**MILTON RICHARD SABA**
**MERLE LYNN SABA**

DEFENDANTS

## MEMORANDUM OPINION

The Complaint filed by the plaintiff, Cynthia Brandon ( "Brandon") prays that the discharge

of the debtors, Milton Richard Saba and Merle Lynn Saba ("Debtors") be denied pursuant to 11

U.S.C. §§ 727(a)(2)(A) and (B), (a)(3), and (a)(4)(A) and (B).  Specifically, Brandon alleges that

Debtors failed to list certain property in their schedules and failed to disclose certain prepetition

transactions in their Statement of Financial Affairs.

Trial on the merits was held on July 19 and 20, 2007.  At the conclusion of trial, the Court

took the matter under advisement.

### I. Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§157 and 1334 and 11 U.S.C. § 727.

1

## II. Standing

Brandon and debtor, Milton Richard Saba ("Mr. Saba"), were involved in a motor vehicle accident on November 10, 2004 ("the Accident"). Brandon allegedly suffered injuries as a result of the Accident. Debtors assert that Brandon is not a creditor of the estate and, thus, lacks standing to bring the Complaint. Pursuant to 11 U.S.C. § 727(c)(1) only:

> The trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this section.

To determine whether Brandon is in fact a creditor, it is necessary to examine Brandon's own bankruptcy case.[1] Brandon filed a petition for relief under Chapter 7 on February 7, 2005. As a result, the cause of action held by Brandon against Mr. Saba became property of the estate. Debtors allege that Brandon's bankruptcy trustee, Wilbur Babin ("Babin") is the proper party to bring this case, and since he has not joined Brandon in the matter, Brandon lacks standing to pursue the claims asserted.

Babin noted in his minutes from Brandon's meeting of creditors, "Trustee will administer lawsuit."[2] Babin's "Interim Report of Trustee" dated May 11, 2005[3] provides,

> Trustee is in the process of employing attorney Stephanie Sanborn to represent the estate regarding debtor's personal injury claim resulting from automobile accident of November 10, 2004.

Babin, pursued Brandon's personal injury claim against Mr. Saba, which resulted in an Order dated June 22, 2006, granting Babin's Motion to Compromise Brandon's claim against New Hampshire Indemnity Company for $25,000.00. Babin's Motion to Compromise only settled claims

---

[1] Case no. 05-10795.

[2] Pleading 4.

[3] Pleading 8.

2

against New Hampshire Indemnity Company reserving all rights of Brandon against other parties, "including but not limited to Milton R. Saba, Jr. d/b/a Superior Stucco, L.L.C." ("Reserved Causes of Action"). As part of the compromise, Babin disclaimed and abandoned the Reserved Cause of Action.

On June 26, 2006, the Court approved Babin's intent to disclaim:

All remaining claims of debtor arising out of the vehicular accident dated November 10, 2004 except those claims against U.M. insurer New Hampshire Indemnity Company settled pursuant to Trustee's Application for Authority to Compromise Claims and to Pay Attorney's Fees and Out of Pocket Expenses. The claims being disclaimed and abandoned are all remaining claims including but not limited to those claims against Milton Saba, Jr. and Superior Stucco, L.L.C.

Babin's Final Report & Account was approved on January 24, 2007, and he filed his Report of Distribution and Application for Closing and Discharge on May 10, 2007. Brandon's bankruptcy case was closed on May 11, 2007.

Because Babin abandoned the rights of Brandon against Mr. Saba, Brandon holds whatever claims exist against Mr. Saba provided her claim exceeds the $25,000.00 received by Brandon's bankruptcy estate in settlement of her damages.[4]

Brandon alleges that she has back injuries and carpal tunnel syndrome as a result of the Accident. Brandon presented evidence of payments she made for medical treatment and

---

[4] Debtors also allege that Brandon's Complaint was not timely. While Brandon's own bankruptcy case was pending and Babin was still administering the Reserved Cause of Action, Brandon filed three motions to extend time to object to discharge in Debtors' bankruptcy case. The Court granted the motions. Debtors did not appeal the Orders and they are now final. The last Order, dated November 3, 2006, granted Brandon a sixty-day extension in which to object to discharge. Brandon filed her Complaint timely on December 20, 2006.

prescriptions related to the Accident in the amount of $2,720.80.[5]

Brandon contends that she is also a creditor due to lost wages, pain, and suffering resulting from the Accident.  Brandon worked at an insurance agency at the time of the Accident and testified that she did not work from the date of the Accident until after the New Year's holiday.   In January 2005, Brandon returned to work but complained of residual pain.  After Hurricane Katrina hit on August 29, 2005, Brandon was out of work due to the hurricane and received unemployment benefits from September 2005 through March 2007.  She has applied for disability benefits, but a hearing has not yet been scheduled.  Brandon testified that she made about $2,200.00 per month at the insurance agency.  The Court accepts for estimation purposes that Brandon was out of work for one month and a half months  immediately after the Accident. Brandon, however, did not produce sufficient evidence to prove that she is presently incapable of working.   Therefore, the Court estimates that Brandon has a claim for lost wages in the amount of $3,100.00.

Brandon alleges that she has suffered pain in the past and continues to suffer as a result of the Accident.  She testified, and the evidence corroborated, that she has seen several doctors for her back problems and has taken numerous medications for relief.[6]  A letter from Dr. Bartholomew dated November 21, 2005, recommended that Brandon undergo surgery ("a three level posterior lumbar interbody fusion with pedicle screws") with an estimated cost of $35,000.00.[7]  If Brandon has suffered pain in the past as a result of the accident, was presently suffering at the time of the

---

[5] Exhibit B42 *En Globo*.  The Court reached this amount by deducting from the evidence presented the amounts for prescriptions and procedures that the Court finds unrelated to the Accident, such as Brandon's hysterectomy and tummy tuck.  The Court also excluded payments covered by insurance.

[6] Exhibit B42 *En Globo*.

[7] Exhibit B42 *En Globo*.

4

trial, and her doctor recommends surgery, the Court must conclude that she will continue to suffer pain after the trial.[8]

Based on the Court's findings regarding lost wages, past and future medical expenses, as well as past and future pain and suffering,[9] the Court estimates Brandon's disputed claim against Mr. Saba to be greater than $25,000.00. Therefore, Brandon has standing as a creditor of the estate to bring the instant complaint under section 727.

### III.  Findings of Fact

On October 15, 2005, Debtors filed a voluntary petition under Chapter 7 of the U. S. Bankruptcy Code.[10]  Brandon has alleged that Debtors failed to list the following property in their schedules:

(1) $2,766.84 in their Parish National Bank ("PNB") account;
(2) two all terrain vehicles;
(3) two jet skis;
(4) a 17 foot boat, motor and trailer;
(5) a 1990 Ford van;
(6) a 1996 GMC 6000 truck;
(7) a 1989 Dodge Grand Caravan;
(8) a 1996 Dodge Caravan;
(9) a 1997 ALJO travel trailer; and
(10) a 2000 Honda motorcycle.

---

[8] *Duchamp v. State Farm Mutual Automobile Ins. Co.*, 916 So.2d 498,505, 2005-339 (La.App. 3 Cir. 11/2/05).

[9] The Court relies on *Duchamp* and *Denton v. Reed*, 739 So.2d 217, 98-1056 (La.App. 5 Cir. 2/23/99), as examples of awards for pain and suffering for back injuries related to motor vehicle accidents.

[10] Case no. 05-20922.

The Court makes the following factual findings with regard to these assets. Debtors did not own, as of the petition date, all terrain vehicles;[11] jet skis;[12] a 17 foot boat, motor and trailer;[13] a 1989 Dodge Caravan;[14] a 1996 Dodge Caravan;[15] a 1997 ALJO travel trailer;[16] or a 2000 Honda motorcycle.[17] The Court further finds that the all terrain vehicles; 17 foot boat, motor and trailer; the 1997 ALJO travel trailer; 1989 Dodge Caravan; and 1996 Dodge Caravan were either transferred more than one year prior to the filing of Debtors' case or were never owned by Debtors.

The Court also finds that a portion of the funds on deposit at Parish National Bank belonged to Mr. Saba's sister who did not have a bank account. The evidence established that a government check payable to Mr. Saba's sister in the amount of $2,358.00 was deposited into the account on October 3, 2005.[18] A second check, payable to Debtors in the amount of $791.40, was deposited on October 15.[19] Both checks were paid by Federal Emergency Management Authority ("FEMA") as a result of Hurricane Katrina.

---

[11] One of the all terrain vehicles belongs to Mr. Saba's nephew. Exhibit SC8. The other was purchased by Debtors post-petition as a birthday gift for their son.

[12] Exhibit SC2.

[13] Exhibit SC6.

[14] Exhibit SC3.

[15] Exhibit SC4.

[16] Exhibit SC5.

[17] Exhibit B39.

[18] S1.

[19] *Id.*

Brandon has also questioned Debtors' disclosure, or lack thereof, of the following:

1.   A sale of a 454 cid engine by Debtors' business, Superior Stucco, LLC to Casadaban Services on May 5, 2006;

2.   The value of Superior Stucco, LLC ("Superior Stucco") as listed in Debtors' schedules;

3.   The representation in the Statement of Financial Affairs that Superior Stucco was not operating on the petition date;

4.   The personal debt of Debtors to Saba Stucco, LLC;

5.   No disclosure of executory contracts for rent of employees;

6.   The amount of Debtors' gross income;

7.   The failure of Debtors to disclose ownership of a Chris Craft boat;

8.   The failure of Debtors to disclose $29,937.00 in insurance money received by Mr. Saba in October 2005 and deposited in the account of Superior Stucco; and

9.   The sale of real property to Mr. Saba's parents in April 2005.

The Court makes the following findings of fact with regard to the above allegations. Brandon failed to produce any evidence at trial as to the value of Superior Stucco, that Debtors' estimated value of the company was materially false at the time the case was filed, or that Debtors' representation that Superior Stucco was not operating on the petition date was untrue. Similarly, Brandon failed to produce any evidence that the debt listed on Debtor's schedules to Saba Stucco, L.L.C. was false. Brandon failed to produce any evidence that any executory contracts existed between Debtors and the employees of Superior Stucco. Brandon offered no evidence to challenge the sale of the 454 cid engine by Superior Stucco or that the amounts set forth on Debtors' Schedules as gross income were materially inaccurate.

Brandon also questioned the sale by Debtors of a piece of real property located at 532 Superior Ave, Bogalusa, Louisiana ("Superior Property") to Mr. Saba's parents in April of 2005. The Court finds that the sale was for the sum of $24,000.00 paid at the time of sale.[20]

----

[20] Exhibits S3 and B22.

7

**IV.  Law and Analysis**

Brandon has taken a shotgun approach to her challenge of Debtors' discharge.  In an effort to convince the Court that Debtors have committed a fraud upon the Court, creditors and Trustee, Brandon has broadly alleged that many assets were owned by Debtors on the date of filing but undisclosed on their Schedules.  She has also alleged that various prepetition transactions were nefarious.  The Court finds that Brandon's allegations with regard to ownership of two all terrain vehicles; two jet skis; a 17 foot boat, motor and trailer; a 1989 Dodge Caravan; a 1996 Dodge Caravan; a 1997 ALJO travel trailer; and a 2000 Honda motorcycle are without merit.  Because Debtors did not own these assets as of the petition date, they were not required to list them on their schedules.  The all terrain vehicles; the 17 foot boat, motor and trailer; 1989 Dodge Caravan; and 1996 Dodge Caravan were either transferred more than one year prior to the filing of Debtors' case or were never owned by Debtors.  As a result, Debtors were not required to disclose either ownership or the applicable dispositions in their Statement of Financial Affairs.  The Court finds nothing suspicious about the transfers nor does it find that Debtors failed to receive the indubitable equivalent for the assets in question.

Brandon has also alleged that Debtors misrepresented:

1.  A sale of a 454 cid engine by Debtors' business, Superior Stucco
    to Casadaban Services on May 5, 2006;
2.  The "actual" market value of Superior Stucco;
3.  Superior's operating status on the petition date;
4.  Debt owed to Saba Stucco, LLC;
5.  The absence of executory contracts over the Superior Property; and
6.  The actual amount of Debtors' gross income

These allegations are without merit because Brandon failed to establish that any of the representations made by Debtors were false.

8

Based on the foregoing findings of fact, the only allegations set forth in Brandon's Complaint that remain for the Court to consider are:

1.  Debtors' failure to disclose in their Statement of Financial Affairs Mr. Saba's sale of the Superior Property;

2.  Debtors' failure to disclose the deposit of insurance proceeds of $29,937.00 into the account of Superior Stucco received for damages sustained to Debtors' Chris Craft boat;

3.  Debtors' failure to disclose at the section 341(a) meeting of creditors that they owned a 1997 ALJO travel trailer, 2000 Honda motorcycle, jet skis, 1996 and 1989 Dodge Caravans within two years of their filing;

4.  Debtors' failure to disclose $2,766.84 in funds held in the PNB;

5.  Debtors' failure to disclose ownership of a 1990 Ford van and a 1996 GMC 6000 truck;

6.  Debtors' failure to disclose in their Statement of Financial Affairs the transfer of two jet skis within one year preceding the bankruptcy filing; and

7.  Debtors' failure to disclose in their Statement of Financial Affairs the theft of the 2000 Honda motorcycle within one year preceding the bankruptcy filing.

### A.  11 U.S.C. §727(a)(2)(A)

Section 727(a)(2)(A) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless-- …

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

(A) property of the debtor, within one year before the date of the filing of the petition; …

The Fifth Circuit established four factors that must be met to deny discharge under section 727(a)(2)(A):

(1) a transfer [or concealment] of property; (2) belonging to the debtor; (3) within one year of the filing of the petition; [and] (4) with intent to hinder, delay, or defraud a creditor or officer of the estate.[21]

Brandon alleges that Debtor's transfer of the Superior Property to his father and the deposit of insurance proceeds into the account of Superior Stucco removed significant property from Debtors' estate for no consideration within one year of filing. Therefore, Debtors' discharge should be denied.

### 1. The Superior Property

Debtors bought the Superior Property for $20,000.00 on August 27, 2004.[22] On April 21, 2005, Debtors sold the Superior Property to Mr. Saba's parents for $24,000.00.[23] In 2005, Superior Stucco was delinquent to the Internal Revenue Service for $33,045.69 in employment taxes and penalties. As a member and manager of Superior Stucco, Mr. Saba was personally responsible for the taxes under IRS regulations. In order to raise the money to satisfy the taxes, Debtors sold the Superior Property to Mr. Saba's parents. The price was $4,000.00 higher than the price Debtors' paid for the property just eight months earlier. A check from the purchasers for $24,000.00 was deposited, and a check to the IRS was immediately paid.[24] Brandon offered no evidence that the sale price of $24,000.00, was not the fair equivalent of the property or that creditors were defrauded by the transaction.

---

[21] *Pavy v. Chastant (In re Chastant)*, 873 F.2d 89, 90 (5th Cir. 1989).

[22] Exhibit S3.

[23] Exhibit B22.

[24] Exhibit S4.

Brandon avers that because Superior Stucco continued to pay the water bills for the Superior Property,[25] the sale was a sham.  Superior Stucco is a construction company that employs migrant workers under a federally sponsored program.  Mr. Saba testified that under the program, Superior Stucco must provide shelter for all temporary alien workers while they are in the United States.  The Superior Property was purchased to house Superior Stucco's workers and continued to do so after it was sold to Mr. Saba's parents.  Superior Stucco paid the water bills because its workers were living in the property.

The Court fails to understand how Superior Stucco's payment of water bills is evidence of Debtors' failure to transfer the property. If Mr. Saba's parents allowed Superior Stucco's workers to live in the property, that was their right.  As long as the sale of the property netted the Debtors a fair price, there is nothing in this transaction of which to complain.  While Debtors were required to disclose the sale of the Superior Property on their Statement of Financial Affairs, the Court has found that the sale was for fair value.  Brandon argues that Debtors' failure to disclose this sale, even if the sale was proper, constitutes additional grounds for denial of discharge.

Debtors testified that they did not disclose any assets or transfers of property held in their names that were used for business purposes because they misunderstood instructions given to them by their attorney.  As they appreciated her directions, "business assets" need not be included in either their Schedules or transactions involving them in their Statement of Financial Affairs. Debtors' interpretation of these instructions was that assets utilized by their business are "business assets," even if titled in their name, and need not be disclosed.  The Court finds this explanation credible. Given that the Superior Property was exclusively used by Debtors to house migrant worker

_____

[25] Exhibit B32.

11

for Superior Stucco, the Court does not find that Debtors' omission was intentional or made with the intent to delay, hinder or defraud creditors.

## 2. Insurance Proceeds

Prior to the bankruptcy filing, Mr. Saba purchased a 1984 Chris Craft boat. In August 2005, Mr. Saba received burn injuries and a finger laceration as a result of a fire on the Chris Craft. Mr. Saba was hospitalized for these injuries from August 17, 2005, until September 2, 2005.[26] Because the insurance policy on the boat was owned by Mr. Saba, on October 11, 2005, he received a check payable to him in the amount of $29,937.00 from Progressive Insurance.[27] Mr. Saba deposited the $29,937.00 check into the business checking account of Superior Stucco. Debtors failed to list the Chris Craft or the insurance proceeds on their Schedules and Statement of Financial Affairs.

Mr. Saba testified that he believed the Chris Craft to be a business, rather than a personal, asset because he bought it with funds taken from Superior Stucco to entertain business clients. He testified that he did not list the Chris Craft or the insurance proceeds in his schedules because his bankruptcy attorney told him that he did not need to list business assets. However, Mr. Saba failed to establish that the Chris Craft was in fact a business asset.

Mr. Saba produced no evidence that the boat was purchased with company funds or insured by the company. He offered no evidence that the company paid for its upkeep or costs of operation. He introduced no evidence of its use for company purposes and offered no evidence that its expenses had been deducted for tax purposes. In fact, the insurance on the boat was held in Mr. Saba's name

---

[26] Exhibit S5.

[27] Exhibit B18.

and the insurance proceeds were delivered by check payable to Mr. Saba personally.[28]  The Court

does not find Mr. Saba's testimony that the Chris Craft was a business asset credible.

The deposit of insurance proceeds payable to Mr. Saba into the account of Superior Stucco

constitutes a transfer of personal assets to Superior Stucco for no consideration.  But was it done

with an intent to deceive or defraud?

> The intent to defraud must be actual, not constructive. [*Pavy v. Chastant*, 873 F.2d
> at 90.]  Nevertheless, "[a]ctual intent ⋯ may be inferred from the actions of the
> debtor and may be proven by circumstantial evidence." *Id. In Pavy v. Chastant (In
> re Chastant)*, we listed the factors that show actual intent to defraud:
>
> (1) [T]he lack or inadequacy of consideration; (2) the family, friendship or close
> associate relationship between the parties; (3) the retention of possession, benefit or
> use of the property in question; (4) the financial condition of the party sought to be
> charged both before and after the transaction in question; (5) the existence or
> cumulative effect of the pattern or series of transactions or course of conduct after
> the incurring of debt, onset of financial difficulties, or pendency or threat of suits by
> creditors; and (6) the general chronology of the events and transactions under
> inquiry.
> *Id.* (*quoting In re Schmit*, 71 B.R. 587, 590 (Bankr.D.Minn.1987)).
>
> There is, moreover, a presumption of fraudulent intent  when a debtor transfers
> property to relatives. *Id.* (*citing In re Butler*, 38 B.R. 884, 888 (Bankr.D.Kan.1984)).
> This court has indicated that once this presumption attaches, the burden shifts to the
> debtor "[to demonstrate] that he lacked fraudulent intent." *Id.*[29]

Debtors received the Progressive check four days before they filed for relief.  Although

Debtors allege that they believed the check was for the loss of a business asset, they offered not one

shred of evidence to support their contention.  While they claim that they disclosed the check to

counsel prior to their filing and acted on her advice, they admit that they told her the boat was a

business asset.  Assuming this fact to be true, counsel's alleged advice (that the insurance proceeds

---

[28] Mr. Saba testified that the Chris Craft was never registered.

[29] *Cadle Company v. Pratt (In re Pratt)*, 411 F.3d 561, 565 (5th Cir. 2005).

13

would not be property of the estate) would be correct.  However, Debtors' question was based on

a false premise, one they themselves could not substantiate and which leaves this Court to conclude

that their intent was to remove these proceeds from creditors on the eve of their filing.

The transfer of these funds to their closely held company, the nature of the asset, the fact that

the check was made payable to Mr. Saba individually, the fact that the policy was in Mr. Saba's

name and the total absence of any proof to support Debtors' defense leads the Court to the

inescapable conclusion that Debtors intended to defraud their creditors.  Accordingly, the Court will

deny Debtors' discharge pursuant to section 727(a)(2)A.  While it is unnecessary for the Court to

continue given this finding, out of an abundance of caution, the Court will address all of Brandon's

other allegations.

### B.  11 U.S.C. §727(a)(2)(B)

Section 727(a)(2)(B) states:

(a) The court shall grant the debtor a discharge, unless-- …

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer
of the estate charged with custody of property under this title, has transferred,
removed, destroyed, mutilated, or concealed, or has permitted to be transferred,
removed, destroyed, mutilated, or concealed-- …

(B) property of the estate, after the date of the filing of the petition;

The elements for § 727(a)(2)(B) are substantially the same as those for section 727(a)(2)(A),

except that the plaintiff must prove that the debtor transferred or concealed property of the estate

after the bankruptcy petition was filed.[30]

Brandon failed to establish that Debtors transferred any property subsequent to the filing of

their case.  As a result, the claims of Brandon under section 727(a)(2)(B) are denied.

---

[30] *In re Hippen*, 2006 WL 112041, *2 (Bankr.N.D.Iowa 2006); *In re Stanke*, 234 B.R.
449, 456 (Bankr.W.D.Mo. 1999).

### C.  Section 727(a)(3) – failure to maintain books and records

Section 727(a)(3) provides in relevant part:

(a) The court shall grant the debtor a discharge, unless- ...

> (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep
> or preserve any recorded information, ..., from which the debtor's financial
> condition or business transactions might by ascertained, unless such act or
> failure to act was justified under all of the circumstances of the case.

Section 727(a)(3) does not prescribe "perfection" as the standard for record-keeping, but it requires a debtor to submit "sufficient written evidence which will enable his creditors reasonably to ascertain his present financial condition."[31] The records required should reflect, with a fair degree of accuracy, the debtor's financial condition in a manner appropriate to the debtor.[32]  Brandon bears the burden of proving that Debtors failed to keep and preserve records and that this failure prevented her from ascertaining Debtors' financial condition.[33]  There are cases in which no duty to keep books arises; in general, consumer debtors have no obligations to keep books.[34]  Brandon alleged in the complaint that Debtors failed to provide financial records, insurance policies and tax returns of themselves and Superior Stucco when requested to do so.  No testimony or evidence of this was

---

[31] *In re Hughes*, 354 B.R. 801, 809 (Bankr.N.D.Tex. 2006) (citation omitted).

[32] *In re Dennis*, 330 F.3d at 703 (citing *Goff v. Russell (In re Goff)*, 495 F.2d 199, 201 (5th Cir. 1974) (An unsophisticated debtor must keep and file records in accordance with his or her common assets and liabilities.).

[33] *Id.*

[34]  *In re Goff*, 495 F.2d at 201; *see also* Collier, ¶727.03[3][b], 727-33.

produced by Brandon at trial.  Therefore, Brandon has failed to establish that Debtors did not

maintain appropriate records.

### D. Section 727(a)(4)(A) and (B)

The Court shall deny discharge pursuant to sections 727(a)(4)(A) and (B) if:

> (4) the debtor knowingly and fraudulently, in or in connection with the case--
>> (A) made a false oath or account;
>> (B) presented or used a false claim.

### 1. 1997 ALJO Travel Trailer, 2000 Honda motorcycle,
### Two Jet   Skis, 1996 Caravan and 1989 Caravan

Brandon complains that Debtors' failed to disclose their prior ownership of a travel trailer,

motorcycle, jet skis, and two vehicles when questioned by the Trustee at their section 341(a) meeting

of creditors.  At the meeting of creditors Debtors' Trustee inquired as to any other vehicles, boats

or trailers not listed in their schedules[35] and owned by them within two years of filing.  Mr. Saba

responded that they "owned a boat."[36] Mrs. Saba responded that they "owned other vehicles, but

they are in the company's name."[37]    Debtors did not disclose that they had personally owned a

travel trailer, motorcycle, two jet skis and two vans within two years of the petition date.  Brandon

complains that Debtors' failure to disclose their prior ownership of these assets constitutes a false

oath with the intent to defraud.

---

[35] Exhibit B26, p. 12.

[36] *Id*. at p. 12,  l. 17.  The Court assumes that this is the 17 foot boat that was sold by
Debtors in July 2004.

[37] *Id*. at p. 12,  ll. 19-20.

Under section 727(a)(4)(A), a debtor's discharge may be denied if:  (1) a debtor makes a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false;  (4) the debtor  made the false statement with intent to defraud; and (5) the statement related materially to the bankruptcy case.[38]

At trial, Debtors admitted that within the two years preceding their filing, they held title to a travel trailer; two jet skis; a 2000 Honda motorcycle; a 1989 Dodge Caravan; and a 1996 Dodge Caravan.  Therefore, Debtors' testimony at their section 341(a) meeting was both under oath and false.  However, the question remains if Debtors knew, at the time the statements were made, that their answers were false and if so, were the misrepresentations material to the administration of their case? Assuming in the affirmative, it may be presumed that their reason for the misrepresentation was to defraud.   Debtors testified that they simply forgot about these items at the time they were questioned because all of them had been sold more than a year prior to filing.

 More than a year before their petition was filed, Debtors left their 1996 Dodge Caravan at Rodney's Automotive ("Rodney's") because it was too expensive to repair.  Rodney's supplied a statement, which was admitted into evidence, that the vehicle had been sold for scrap in June 2004.[39]

Debtors testified that the travel trailer was sold in July 2004.[40]  They also testified that Mrs. Saba sold the 1989 Dodge Caravan in September 2004 to an employee of Superior Stucco for $100.00.[41]  All of these transactions were more than a year prior to the petition date.  Debtors

---

[38]  *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

[39] Exhibit SC4.

[40] Exhibit SC5.

[41] Exhibit SC3.

17

testified that they sold two jet skis on December 15, 2004.[42]  Debtors also testified that their Honda

motorcycle was stolen on December 1, 2004, as evidenced by a police report.[43]

A  reckless disregard of both the serious nature of the information sought and the necessary

attention to detail and accuracy in answering the questions presented by the schedules and statement

of financial affairs may rise to the level of fraudulent intent necessary to bar a discharge.[44]

Nevertheless, "a false statement resulting from ignorance or carelessness is not one that is knowing

and fraudulent."[45]  "The standard for obtaining a discharge is not perfection."[46]

> To deny a debtor's discharge under ;4407;4407Section727(a)(4)(B), the debtor must
> have presented or used an inflated or fictitious claim in a bankruptcy case, with
> intent to defraud. *In re Natale,* 136 B.R. 344, 349 (Bankr.E.D.N.Y.1992); *In re
> Overmyer,* 121 B.R. 272, 282 (Bankr.S.D.N.Y.1990); *Arcuri,* 116 B.R. at 886.[47]

The Court finds Debtors' testimony and the evidence offered in support credible.  Because

Debtor did not own the 1996 Dodge Caravan, the travel trailer and the 1989 Dodge Caravan within

a year of filing, disclosure of their prior ownership was not required in their Statement of Financial

---

[42] Exhibit SC2.

[43] Exhibit B39.

[44] *In re Beaubouef,* 966 F.2d at 178.

[45] Collier, ¶727.04[1][b] 727-40-41; *see also, In re Beaubouef,* 966 F.2d at 178
(Discharge cannot be denied when assets are omitted by honest mistake.);  *Oldenforf
v. Buckman,* 173 B.R. 99, 105 (E.D.La. 1994) (If mistakes in schedules are "the result
of an honest mistake or inadvertence," they do not show fraudulent intent or reckless
indifference.).

[46] *Davis, et al. v. Tomasek (In re Tomasek)*, 175 Fed.Appx. 662, 670, 2006 WL
925536, *7 (5th Cir. 2006).

[47] *In re Gollomp*, 198 B.R. 433,  439 (S.D.N.Y. 1996).

Affairs.  Therefore the Court finds it plausible that Debtors would not remember owning these assets over a year later.  While the transactions involving the two jet skis and the theft of the Honda motorcycle were within one year of the petition date, the Court finds credible Debtors' testimony that their failure to disclose ownership of these assets within two years of the petition date was oversight.  In addition, the assets are not of significant value, and their disclosure was not material to the administration of the estate.

Brandon has not shown that Debtors made these statements with fraudulent intent or that the statements were material to the administration of Debtors' bankruptcy case.  The discovery of a prior ownership in a vehicle worth so little that it was abandoned at the auto repair shop and ultimately sold for scrap is hardly material to this case. Similarly, the sale of a 16 year-old vehicle for $100.00 is also immaterial.  The failure to disclose a sale of a seven year old travel trailer over one year prior to the petition date, the theft of a motorcycle and the sale of two jet skis ten months prior to the petition date are not material enough to prevent discharge.   The disclosure of these transactions would not have led to additional assets or information important to the administration of the estate. Accordingly, the Court finds that Brandon has not met her burden of proof under section 727(A)(4) and therefore her claims are denied.

### 2. $2,766.84 in PNB checking account

Debtors failed to list in their schedules $2,766.84 on deposit in their personal checking account as of the petition date.   Debtors testified that a portion of the funds on deposit was given to them by FEMA as a result of Hurricane Katrina, and the rest of the money was given to Mrs. Saba's sister by FEMA.[48]   Following Hurricane Katrina, many residents of this district were

_____

[48] Exhibit S1.

displaced and banks were unavailable due to computer shutdowns.  The amounts delivered by

FEMA to Debtors and Mr. Saba's sister were routinely paid to all residents affected by the storm

to alleviate the costs associated with their evacuation and displacement. Mrs. Saba's sister did not

have a checking account, so Debtors deposited the checks in their account and were holding the

money for her.  The evidence presented corroborates Mrs. Saba's testimony.

Debtors should have listed the property held for Mrs. Saba's sister in their Statement of

Financial Affairs.  Debtors should have also listed the amount FEMA gave to them as an asset  and

then claimed the amount as exempt under 44 C.F.R. § 206.110(g).  However, the omission of

property of little or no value, while technically violative of a debtor's duty to disclose, should not

bar a debtor's discharge unless the false oath concerns the discovery of additional assets, business

dealings or the disposition of property.[49]   Because the discovery of this asset did not lead to

additional assets and was of no value to the estate, the false oath was immaterial.  Thus, this

omission when taken alone, is not sufficient to deny Debtors' discharge.

### 3. 1990 Ford Van and 1996 GMC Truck

Debtors held title in a 1990 Ford van and 1996 GMC truck on the petition date.  Neither

vehicle was disclosed in Defendents' Schedules.  Both vehicles were used exclusively for business

by Superior Stucco's employees.  At the section 341(a) meeting, the Trustee asked Debtors if they

owned any other motor vehicles other than those listed in their Schedules.   When questioned at the

section 341(a) meeting of creditors about the number of vehicles currently owned by Superior

---

[49] In re *Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992).

Stucco, Debtors disagreed.  Mrs. Saba said, "Two,"[50] but Mr. Saba responded, "It's just the van"[51] and indicated that the van was made in 1994.  In fact, Superior Stucco used two vehicles, a 1990 Ford van and a 1996 GMC truck to transport employees to and from job sites.  Both were titled in Debtors' names.  Debtors mistakenly believed that because these assets were used exclusively by Superior Stucco, they were business assets.  Because Debtors' counsel had previously advised Debtors that business assets need not be disclosed, Debtors believed that assets used in their business were not assets subject to disclosure.  The Court finds this testimony credible because Debtors disclosed at their section 341(a) meeting that Superior Stucco had a van and possibly another vehicle.[52]  Debtors' disclosure of the existence of other vehicles corroborates their assertions that they did not intend to conceal assets from the Trustee or creditors but merely misunderstood counsel's advice.

Brandon has also failed to establish that the discovery of a seventeen year old van and a nine year-old truck were material to Debtors' case.  The Court finds that Brandon has not met her burden of proving that Debtors had the requisite fraudulent intent under section 727(a)(2)(A) or (a)(4).

---

[50] *Id.* at p.13, l. 6.

[51] *Id.* at p. 13 at l. 9.

[52] Exhibit B26, p. 12.  Mr. Saba incorrectly stated at the section 341(a) meeting that the van was a 1994, but the Court believes that his was an unintentional mistake.

## V.  Conclusion

The Court finds that Debtors intended to defraud creditors by failing to disclose the existence of insurance proceeds received as a result of an accident.  Accordingly, Debtors will be denied discharge pursuant to section 727(a)(2)(A).

New Orleans, Louisiana, September 27, 2007.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge